**E-Filed 5/16/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNCREST ENTERPRISE, et al.,<br><br>    Defendants. | Case Number C 03-5424 JF (HRL)<br><br>ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>[Doc. Nos. 100, 119, 121] |

Plaintiff Microsoft Corporation ("Microsoft") moves for summary judgment of its claims against Defendants Suncrest Enterprise ("Suncrest") and Yi-Ling Chen ("Chen"). Suncrest and Chen have filed cross-motions for partial summary judgment. Each parties' motion will be granted in part and denied in part, as set forth below.

**I. BACKGROUND**

Microsoft develops, distributes and licenses computer software programs. Prior to ceasing operations, Suncrest was a "middleman" that bought and resold computer goods. Chen has been the sole shareholder, owner and officer of Suncrest since its incorporation.

<u>First Test Purchase</u>

Microsoft sometimes sends undercover investigators to purchase products from wholesalers who carry Microsoft products. In September 2001, one such investigator made a test purchase from Suncrest of four units of Microsoft Windows 98. All four units turned out to be counterfeit. Microsoft did not inform Suncrest of its discovery or take any further action at that time.

<u>Surprise Inspection Of Suncrest Warehouse</u>

Almost one year later, on August 2, 2002, one of Microsoft's attorneys, Erik Blank ("Blank"), made an unscheduled visit to Suncrest, accompanied by law enforcement officers. Chen allowed Blank and the officers to enter Suncrest's warehouse and inspect Suncrest's entire inventory of approximately 100 Microsoft products. Blank told Chen that all of the products were genuine.

<u>Microsoft's August 2002 Letter To Suncrest</u>

Shortly thereafter, on August 23, 2002, Microsoft sent Suncrest a four-page letter that was friendly in tone but that also made clear that Microsoft would not tolerate even inadvertent sales of counterfeit products. Exh. 36 to Chen Depo, Aug. 2002 Letter. The letter referenced the prior test purchase of counterfeit products by a Microsoft investigator, stated that Suncrest had been the subject of a large number of calls to Microsoft's anti-piracy hotline, stated that Suncrest had received a previous warning letter,[1] and cautioned Suncrest to "take every reasonable step to avoid software copyright infringement in the future." *Id.* at p. 2. The letter suggested that Suncrest guard against inadvertent purchases of suspect products by purchasing from a list of "Authorized Distributors" of Microsoft products. *Id.* at p. 3. The letter stated, however, that Suncrest "may always purchase genuine, properly channeled software from any legitimate source. Purchasing from authorized sources is purely voluntary and is suggested only as a means of ensuring authenticity." *Id.*

---

[1] The date of such letter is not provided, and there does not appear to be any other reference to such prior warning letter in the record before the Court.

2

Case No. C 03-5424 JF (HRL)
ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)

### Second Test Purchase

In October 2002, Microsoft investigators made a second test purchase of three Windows 98 units; all three units were determined to be genuine.

### Third Test Purchase

In October 2003, investigators made a third test purchase from Suncrest that included one unit of Office Pro 2000 and one unit of Windows 98.[2] Both products were genuine, but the Certificate of Authenticity ("COA") accompanying the Windows 98 product was counterfeit. A Microsoft COA is a document or sticker label that Microsoft includes in or with its software packages to assure end users that they have received genuine Microsoft products.

### Microsoft Files Suit

Microsoft filed the instant lawsuit on December 2, 2003, asserting claims against Suncrest and Chen for: (1) copyright infringement; (2) trademark infringement in violation of the Lanham Act; (3) false designation of origin in violation of the Lanham Act; (4) unfair competition under California law; (5) imposition of a constructive trust; and (6) and accounting. Suncrest and Chen answered on January 19, 2003 and cross-complained against the company that had supplied the suspect products, M-Plus International Technology, Inc. ("M-Plus").

## II. LEGAL STANDARDS

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to

---

[2] The Court notes that Suncrest's papers state that the third test purchase was made in January 2003. Based upon the invoices attached to the declaration of Steve Schlanger, it appears that the correct date of the purchase is October 2003.

present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

### III. DISCUSSION

Microsoft seeks summary judgment that Suncrest is liable for copyright infringement, trademark infringement, false designation of origin and unfair competition[3]; that Suncrest's principal, Chen, is personally liable on these claims; and that Microsoft is entitled to the maximum allowable statutory damages for non-willful infringement of its copyright and trademarks, as well as costs and attorneys' fees and permanent injunctive relief.

Suncrest and Chen seek summary judgment of Microsoft's claims for constructive trust and accounting. Suncrest additionally seeks summary judgment that Microsoft's request for a permanent injunction is moot because Suncrest is defunct. Finally, Chen seeks summary judgment that she cannot be held personally liable with respect to Microsoft's claims for trademark infringement, false designation of origin, unfair competition, constructive trust or accounting (she does not make this motion with respect to Microsoft's claim for copyright infringement).

### A.     Evidentiary Issues

As an initial matter, the Court concludes that the undisputed evidence in the record establishes that Suncrest sold four counterfeit Windows 98 products in 2001 and one counterfeit Microsoft COA in 2003. Suncrest and Chen assert that the evidence is insufficient to establish that they in fact sold these counterfeit products. First, Defendants note that Steve Schlanger ("Schlanger"), the investigator who made the purchases, states that when he received shipment of the products he opened the boxes to confirm the contents and then shipped the software "to a

---

[3] Microsoft's claims appear to be based solely upon the 2001 sale of the Windows 98 products, and not on the 2003 distribution of the counterfeit COA. Presumably, evidence of the counterfeit COA is presented to strengthen Microsoft's arguments that Suncrest acted recklessly in distributing counterfeit Microsoft products.

Microsoft representative." Schlanger ¶¶ 5, 7. Schlanger does not identify the Microsoft representative, does not provide dates of shipment and does not specify where the products were shipped.

Microsoft submits a declaration from one of its employees, Kristi Bankhead ("Bankhead"), whose duties include analyzing software samples to determine whether the software is counterfeit. Bankhead Decl. ¶ 8. Bankhead states that she examined four units of Microsoft Windows 98 obtained by an investigator from Suncrest in October 2001,[4] as well as a Windows 98 COA obtained by an investigator from Suncrest in October 2003. *Id.* ¶¶ 11, 14. She states that she found the products to be not genuine. It appears clear from a comparison of the two declarations that Bankhead examined the same products purchased by Schlanger. However, Defendants point out that Bankhead does not state when she examined the software or establish a chain of custody between the time of purchase and the date of examination.

While the it could wish for more specificity in the declarations of Microsoft's witnesses, the Court concludes that the declarations of Schlanger and Bankhead are sufficient to meet Microsoft's initial burden of demonstrating that the counterfeit software was purchased from Suncrest. The fact that the declarants failed to dot every "i" and cross every "t" certainly opens the door for Defendants to present evidence that the products in question were *not* purchased from Suncrest. However, Suncrest presents no evidence suggesting as much. Accordingly, the Court concludes that any reasonable trier of fact confronted with this record would conclude that the four counterfeit Windows 98 products and the counterfeit COA in fact were purchased from Suncrest.

**B.      Copyright Infringement**

   **1.      Liability**

A claim of copyright infringement requires a showing of two elements: (1) the plaintiff has a valid copyright in the work and (2) the defendant infringed the copyright. *Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005). Microsoft has

---

[4] The investigator stated that the actual date of purchase was in September 2001.

5

submitted its copyright registration certificate for the Windows 98 software, and there is no dispute that Microsoft has a valid copyright in that software.  Sale of unauthorized copies of a work constitutes copyright infringement.  *Id.* at 261.  Accordingly, based upon the undisputed evidence that Suncrest sold counterfeit Windows 98 software in 2001, Microsoft has established Suncrest's liability for copyright infringement.

With respect to Chen, there are three possible theories of liability:  direct infringement, contributory infringement and vicarious liability.  *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  "To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act."  *Id.*  To prove a claim of contributory infringement, a plaintiff must show that the defendant, with knowledge of the infringing activity, "induces, causes or materially contributes to the infringing conduct of another."  *Id.* (internal quotation marks and citation omitted).  To prove a claim of vicarious liability, a plaintiff must show that the defendant "enjoys a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity."  *Id.* (internal quotation marks and citation omitted).

Microsoft asserts theories of contributory infringement and vicarious liability against Chen.  The Court concludes that Microsoft has not carried its burden of establishing contributory infringement, that is, that Chen knew or should have known of Suncrest's infringing conduct and induced, caused or materially contributed to such conduct.  However, the Court concludes that Microsoft has carried its burden of establishing that Chen is vicariously liable for Suncrest's infringement based upon a showing that Chen enjoyed direct financial benefit from Suncrest's infringing activity and had the right and ability to supervise such activity.  It is undisputed that Chen was the sole shareholder of Suncrest at the time in question; accordingly, she reaped the financial benefit of all of Suncrest's sales, including sales of counterfeit goods.  It likewise is undisputed that Chen founded Suncrest, was its Chief Executive Officer (indeed, its sole officer), and its sole shareholder.  Chen worked daily at Suncrest, was responsible for all hirings and firings, and her directions were followed by the sales department.  She admits in her declaration

6

that she gave "clear" directions to the sales department to purchase Microsoft products only from reputable vendors, and recites a number of facts demonstrating her knowledge of Suncrest's sales practices. Chen Decl. ¶ 2. Knowledge of the infringing activity is not an element of vicarious liability; the doctrine is premised upon the theory that an individual who is in a position to police the conduct of a direct infringer, and whose economic interests are entwined with that of the direct infringer, should be held jointly liable for the infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996). Accordingly, the Court will grant Microsoft's motion for judgment of liability against Chen personally on the copyright claim.

### 2. Statutory Damages

A copyright owner may elect, at any time before final judgment is rendered, to recover "instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). If a plaintiff makes this election, the court has discretion to award any amount between $750 and $30,000 for each copyright infringed. *Id.*; *Island Software*, 413 F.3d at 262-63. If the defendant's infringement was willful, the court in its discretion may enhance the award to as much as $150,000 per copyright infringed. 17 U.S.C. § 504(c)(2); *Island Software*, 413 F.3d at 263. Here, Microsoft seeks the maximum allowable damages for non-willful infringement, that is, $30,000 for infringement of the copyright in the Windows 98 software.

Although Microsoft is not seeking damages for willful infringement, Microsoft argues that Defendants in fact acted willfully, or at least recklessly, and on this basis seeks an award of the maximum allowable statutory damages for non-willful infringement. After reviewing the record as a whole, the Court concludes that an award of $30,000 would be grossly disproportionate to the offense. The vast majority of Suncrest's business was in computer hardware; at most, software sales made up only two or three percent of total sales. Chen Decl. ¶ 2. Suncrest is not accused of producing the counterfeit products at issue; Suncrest purchased those goods from third parties and resold them in the normal course of business. *Id.* at ¶ 5.

While the evidence demonstrates that four Windows 98 products purchased by an investigator in 2001 turned out to be counterfeit, there is no evidence that Suncrest knew the

products were counterfeit. Moreover, there is no evidence that Microsoft informed Suncrest that the products were counterfeit at the time of purchase. Microsoft did nothing for approximately one year, at which time it made a surprise visit to Suncrest's warehouse, accompanied by law enforcement officers. Although not legally obligated to do so, Suncrest allowed Microsoft's representative and the law enforcement officers to examine all Microsoft products in the warehouse, and all were determined to be genuine. Microsoft subsequently made a second test purchase from Suncrest, and received genuine Microsoft products. Approximately two years after the test purchase which resulted in the counterfeit products, Microsoft made a third test purchase, and received genuine Microsoft products but a counterfeit COA. Far from suggesting that Suncrest was intentionally or recklessly distributing counterfeit software products, these facts suggest that Suncrest was a legitimate business and that a few counterfeit products slipped through.

Microsoft makes much of the fact that Suncrest continued to purchase Microsoft products from "unauthorized" dealers even after receipt of Microsoft's August 2002 letter providing a list of "authorized" dealers. However, examination of the letter itself reveals that Suncrest was *not* told that it was required to purchase from "authorized" dealers, but rather was told that it "may always purchase genuine, properly channeled software from any legitimate source. Purchasing from authorized sources is purely voluntary and is suggested only as a means of ensuring authenticity." Exh. 36 to Chen Depo, Aug. 2002 Letter. The recent surprise inspection of Suncrest's warehouse had revealed that all Microsoft products were genuine. Accordingly, Suncrest's continued purchase of Microsoft products from businesses it considered legitimate does not constitute evidence of willfulness or recklessness even though such businesses were not on Microsoft's list of "authorized" dealers. Suncrest provides the declaration of its principal, Chen, who states that Suncrest has never been accused of or sued for selling counterfeit products with the exception of this case; that Suncrest dealt with companies it believed to be reputable; that Suncrest paid fair market prices for the Microsoft software products; and that Suncrest chose these smaller dealers because Microsoft's "authorized" distributors are large companies that prefer to sell in larger quantities than Suncrest could handle. Chen Decl. ¶¶ 7, 10, 14, 16.

1  As noted above, and conceded by the parties at the hearing, it is the Court's responsibility to determine statutory damages under the Copyright Act.  Given that the total purchase price of the Windows 98 products was $340, and absent evidence of willful or reckless conduct on the part of Suncrest, the Court concludes that an award of $5,000 is appropriate for the copyright infringement in this case.

### 3. Costs And Attorneys' Fees

Under the Copyright Act, the court in its discretion may award costs and attorneys' fees to the prevailing party.  17 U.S.C. § 505; *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996).  Such recovery is not automatic, but exceptional circumstances are not required before attorneys' fees are awarded.  *Historical Research*, 80 F.3d at 378.  "[D]istrict courts may freely award fees, as long as they treat prevailing plaintiffs and prevailing defendants alike and seek to promote the Copyright Act's objectives." *Id.*  "District courts should consider, among other things, the degree of success obtained; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 379 n.1 (internal quotation marks and citation omitted).

As discussed above, the record does not demonstrate willful or reckless conduct on the part of Suncrest.  However, the copyright violation did occur, and Microsoft was put to the trouble and expense of bringing this action.  While Microsoft has not recovered all of the relief it sought, it has obtained an adjudication of liability and a not insignificant award of damages.  The Court therefore is inclined to award reasonable attorneys' fees and costs in an amount not to exceed $30,000.  The Court will direct Microsoft to file a declaration detailing the fees and costs expended in prosecuting its copyright claim.

Accordingly, the Court will grant Microsoft's motion for summary judgment against Suncrest and Chen on the copyright claim, and will award statutory damages in the amount of $5,000, as well as reasonable costs and attorneys' fees, not to exceed $30,000.

### 4. Injunctive Relief

A copyright owner may obtain an injunction upon demonstrating a threat of continuing

infringement. *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994). Here, the record demonstrates that Suncrest is defunct, and has maintained limited viability solely for the purpose of defending this action. Accordingly, the Court will deny Microsoft's motion with respect to injunctive relief.

**C.   Trademark Infringement**

   **1.   Liability**

Microsoft may establish a trademark infringement claim under the Lanham Act by demonstrating that Suncrest used in commerce a counterfeit of Microsoft's mark in a manner like to cause customer confusion. 15 U.S.C. 1114(1); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). Microsoft's registration of its "MICROSOFT" and "WINDOWS" marks constitutes *prima facie* evidence of the validity of the marks and of the Microsoft's exclusive right to use the marks. 15 U.S.C. § 1115(a); *Brookfield*, 174 F.3d at 1047. Accordingly, based upon the undisputed evidence that Suncrest sold counterfeit Microsoft Windows 98 products in 2001, Microsoft has established Suncrest's liability for infringement of the "MICROSOFT" and "WINDOWS" marks.

Microsoft asserts that Chen is contributorily liable for Suncrest's trademark infringement, citing *Monsanto Co. v. Haskel Trading*, 13 F.Supp.2d 349 (E.D.N.Y. 1998) for the proposition that "[w]hile a corporate officer is not necessarily individually liable for torts committed on behalf of the corporation, personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind the defendant corporation's infringement." *Id.* at 354 (internal quotation marks and citations omitted). However, the evidence in the record is that while Chen certainly had authority to give direction to the sales department, she did not personally participate in purchasing decisions outside of instructing the sales department to purchase from established, reputable vendors. Chen Decl. ¶¶ 2, 8-12. Accordingly, the Court concludes that Chen is entitled to judgment that she is not personally liable for trademark infringement.

   **2.   Statutory Damages**

A trademark owner may elect, at any time before final judgment is rendered, to recover

statutory damages instead of actual damages for use of a counterfeit mark. 15 U.S.C. § 1117(c). If a plaintiff makes this election, the court has discretion to award any amount between $500 and $100,000 per counterfeit mark. *Id.* If the defendant's infringement was willful, the court in its discretion may enhance the award to as much as $1,000,000 per counterfeit mark. *Id.* Here, Microsoft seeks the maximum allowable damages for non-willful infringement, that is, $200,000 for infringement of the marks "MICROSOFT" and "WINDOWS."

For the same reasons discussed above with respect to Microsoft's claim of copyright infringement, the Court concludes that an award of $200,000 would be grossly disproportionate to the offense. As noted above, and conceded by the parties at the hearing, it is the Court's responsibility to determine statutory damages under the Lanham Act. Given that the total purchase price of the Windows 98 products was $340, and absent evidence of willful or reckless conduct on the part of Suncrest, the Court concludes that $5,000 is an appropriate award for each trademark violation, for a total of $10,000 for violation of the "MICROSOFT" and "WINDOWS" trademarks.

Accordingly, the Court will grant Microsoft's motion for summary judgment against Suncrest on the trademark infringement claim, and will award statutory damages in the amount of $10,000. The Court will deny Microsoft's motion for summary judgment against Chen on the trademark infringement claim, and will grant Chen's cross-motion on this claim.

### 3. Costs And Attorneys' Fees

Under the Lanham Act, the court in its discretion may award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). As discussed above, the record does not demonstrate willful or reckless conduct on the part of Suncrest. Accordingly, the Court concludes that this is not an exceptional case warranting an award of attorneys' fees under the Lanham Act.

### D. False Designation Of Origin

"A claim for false designation of origin under section 43 of the Lanham Act arises when a person uses in commerce a word, term, name or symbol, or a false or misleading description or representation of fact which is likely to cause confusion or to deceive as to the origin,

sponsorship or approval of goods." *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800 (E.D. Mich. 2000) (citing 15 U.S.C. § 1125(a)(1)). Distribution of the counterfeit Microsoft Windows 98 products establishes Suncrest's liability for false designation of origin. *See id.*

The same standards governing individual liability for trademark infringement govern individual liability for false designation of origin. *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 913-14 (E.D.N.Y. 1988). The Court therefore will grant Microsoft's motion for summary judgment against Suncrest on the claim of false designation of origin, but will deny Microsoft's motion against Chen on this claim and will grant Chen's cross-motion for summary judgment on the claim of false designation of origin.

**E.      Unfair Competition Under State Law**

California's Unfair Competition Law defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The Legislature intended this sweeping language to include  anything that can properly be called a business practice and that at the same time is forbidden by law. *Bank of the West v. Sup. Ct.*, 2 Cal.4th 1254, 1266 (1992) (internal quotation marks and citation omitted). To state a claim under the UCL, a plaintiff need not plead all the traditional elements of a tort; instead, the plaintiff need show only "that members of the public are likely to be deceived." *Id.* at 1267 (internal quotation marks and citation omitted). Under this broad definition, Suncrest is liable under California's UCL based upon its distribution of counterfeit Microsoft products.

With respect to Chen, Microsoft again argues that she authorized or directed the infringing conduct. However, as discussed above, the record does not demonstrate that Chen actually directed the purchase and resale of the infringing products, only that she had *authority* over those who did so. While this authority is sufficient to render Chen individually liable for copyright infringement, it is not sufficient to render her individually liable for unfair competition. Accordingly, the Court will grant Microsoft's motion for summary judgment against Suncrest on the unfair competition claim, but will deny Microsoft's motion for summary judgment against

Chen on this claim and will grant Chen's cross-motion for summary judgment on the unfair competition claim.

F.   **Constructive Trust And Accounting**

Suncrest and Chen argue that the fifth claim for constructive trust and sixth claim for accounting are procedurally improper, because constructive trust is not a separate claim and there is no basis for an accounting given Microsoft's concession that it seeks only statutory damages. Although Defendants technically are correct that constructive trust is a remedy, rather than a free-standing claim, as a matter of practice constructive trust commonly is pleaded as a separate claim and the Court will not grant summary judgment on this basis. With respect to the sixth claim for an accounting, the Court understands Microsoft's concession to extend only to the first claim for copyright infringement and the second claim for trademark infringement. Microsoft may seek an accounting with respect to its third claim for false designation of origin and fourth claim for unfair competition. Accordingly, the Court will deny Defendants' motion on this basis.

Because Chen has established that she personally is entitled to summary judgment with respect to all substantive claims except for copyright infringement, as to which claim Microsoft has limited itself to statutory damages, the Court will grant Chen's motion for summary judgment on the claims of constructive trust and accounting.

G.   **Scope Of The Remaining Action**

In light of the Court's disposition of the parties' cross-motions for summary judgment, the only remaining issues for trial between these parties are the amounts of damages Microsoft is entitled to recover from Suncrest on the claims of false designation of origin and state law unfair competition, and the extent to which the remedies of constructive trust and accounting should be imposed against Suncrest. The Court is aware that Suncrest has a cross-claim pending against M-Plus, but is not aware of the status of this cross-claim.

Case No. C 03-5424 JF (HRL)
ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)

## IV. ORDER

(1) With respect to the first claim for copyright infringement, summary judgment is GRANTED for Microsoft against both Suncrest and Chen; statutory damages are awarded in the total amount of $5,000; costs and attorneys' fees are awarded in an amount not to exceed $30,000; and permanent injunctive relief is DENIED;

(2) With respect to the second claim for trademark infringement, summary judgment is GRANTED for Microsoft against Suncrest, but GRANTED for Chen against Microsoft; and statutory damages are awarded against Suncrest only in the total amount of $10,000;

(3) With respect to the third claim for false designation of origin, summary judgment on liability is GRANTED for Microsoft against Suncrest, but GRANTED for Chen against Microsoft; and damages have not been adjudicated;

(4) With respect to the fourth claim for state law unfair competition, summary judgment on liability is GRANTED for Microsoft against Suncrest, but GRANTED for Chen against Microsoft; and damages have not been adjudicated;

(5) With respect to the fifth claim for constructive trust and sixth claim for accounting, summary judgment is GRANTED for Chen against Microsoft; and the propriety of these remedies with respect to Suncrest has not been adjudicated;

(6) The only remaining issues for trial between Microsoft, Suncrest and Chen are the amounts of damages Microsoft is entitled to recover from Suncrest on the claims of false designation of origin and state law unfair competition, and the extent to which the remedies of constructive trust and accounting should be imposed against Suncrest;

(7) As soon as is practical, the parties shall notify the Court as to the status of Suncrest's cross-claim against M-Plus; and

(8) Microsoft shall submit a declaration setting forth its reasonable attorneys' fees incurred in prosecuting its copyright claim within seven (7) days after service of this order.

DATED: 5/16/06

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:

2

3  Jennifer N. Chiarelli     Jchiarelli@perkinscoie.com, skumagai@perkinscoie.com

4  John C. Gorman     jgorman@gormanmiller.com

5  Craig Alan Hansen     chansen@gormanmiller.com

6  Andrew K. Jacobson     andy@bayoaklaw.com

7  Shawn T. Leuthold     leuthold@aol.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03-5424 JF (HRL)
ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC2)